CORTRIGHT METAL ROOFING COMPANY, APPELLEE, V. WILLIAM G. MERTEN; UNITED SURETY COMPANY OF BALTIMORE, APPELLANT.

FILED JANUARY 30, 1914. No. 17,366.

1. **Principal and Surety:** CONTRACTOR'S BOND: LIABILITY OF SURETY. A departure from the terms of the initial draft of a contract for the construction of a public building *held* not to release the contractor's surety, though the change was made after the bond was signed and before it was delivered, where the terms of the bond applied alone to the executed building contract; the bond having been delivered by one to whom it had been entrusted for that purpose, with full knowledge of the change.

2. ———: ———: ———. A surety on the bond of a public contractor *held* not released from liability for a default against which it had bonded obligee.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Francis A. Brogan,* for appellant.

*S. L. Geisthardt, contra.*

ROSE, J.

This is an action on the bond of a public contractor who had agreed for the consideration of $77,872 to construct for the state of Nebraska at the asylum for the insane at Norfolk a new fireproof wing, a cottage, and a ,non-fireproof storehouse. William G. Merten was the contractor. According to specific terms of the building contract, it obligated the contractor, under the penalty expressed in a bond thereto attached, "to furnish all labor, materials, machinery, appliances or things necessary to construct, equip and fully build, and complete ready for use," the buildings mentioned. The improvements were to conform to plans and specifications attached to and made a part of the building contract, in which the state was described as "party of the first part." In the penal sum of $25,000, with the state of Nebraska named as obligee, the bond on which the action is based, if enforceable, bound the contractor as principal and the United Surety Company of Baltimore as surety, as follows: "Now if the said William G. Merten shall faithfully keep and perform each and every one of the stipulations and agreements contained in said contract, at the times and in the manner therein specified, and pay off and settle in full with the person or persons entitled thereto all accounts and claims that may become due by reason of laborers' or mechanics' wages, or for materials furnished, or services rendered to said party of the first part in executing or performing the obligations of said contract so that each of such persons may receive his just dues in that behalf, then this obligation is to be void, otherwise to be and remain in full force and effect in law." Due execution of the building contract on the part of the state and the contractor is conceded. The contractor executed the bond, and it was signed and sealed by a duly authorized agent of the surety. Plaintiff furnished materials for the buildings, and the

contractor violated his agreement to pay for them. This is a suit on the bond for the price of the materials so furnished. The contractor, though named in the petition as one of the defendants, was not summoned, and the case proceeded against the surety alone. Two defenses were interposed: (1) The bond was never mutually executed by the state and the surety. (2) Plaintiff was not entitled to the protection of the bond. Upon a trial of the issues in the district court, without the intervention of a jury, plaintiff recovered a judgment for the full amount of its claim, amounting to $1,319.40, April 26, 1911. The surety has appealed.

1. Was the plea that the bond never became a binding contract between the state and the surety established? This defense is based on a departure from the terms of the building contract as originally drawn. The contractor and the state, acting through its board of public lands and buildings, made the change in the unexecuted, original draft of the building contract after the bond had been signed by the surety and before it had been delivered. The bond was signed in Omaha, December 3, 1907, by Edward E. Howell, agent of the surety. The building contract was executed at the capitol in Lincoln, December 4, 1907, and the change was made earlier the same day. The nature of the defense, as understood by the surety, is definitely stated by counsel as follows: "The position of the surety company in this case is that Merten and the surety company made an offer to the state of Nebraska to enter into a contract, and the state never accepted the offer in the terms in which it was made, and therefore never accepted it at all. So far as Merten is concerned, he consented to the modified acceptance, and there was no doubt a valid contract between him and the state, but the United Surety Company was not a party to it. It is not a question of the alteration of an existing contract. It is purely a question as to whether the minds of the parties have ever met upon a common ground—whether the offer made was ever accepted in the terms in which it was made; and there is lacking in this case the

elementary requisite of the meeting of the minds upon a common subject."

The departure from the original draft of the building contract is as follows:

"Lincoln, Nebraska, Dec. 4, 1907.

"To the Board of Public Lands & Buildings of the State of Nebraska: I agree to substitute stone instead of pressed brick on both the new wing and cottage through 1st and 2d stories as originally shown on all of the plans and specifications prepared by George A. Berlinghof, Architect, in exchange for the fireproof construction of cottage, substituting the slow-burning construction as called for under item 2 of page 19 on original bidding sheet. Very truly yours, W. G. MERTEN."

The evidence is undisputed that this change reduced the cost of construction. Before the building contract had been made or the surety bond signed, the contractor procured from the architect copies of the original draft with plans and specifications attached. At that time the copies correctly showed the transactions as far as they had progressed. They were in no sense contracts. Neither party was bound by them. The contractor gave one copy to O. W. Palm, an insurance broker of Lincoln, and orally applied to him for a surety bond. Palm forwarded the copy to the Brennan-Love Company, general insurance agents at Omaha, and the latter turned it over to Edward E. Howell, who signed the name of the United Surety Company to the bond in controversy, December 3, 1907, without the written application usually exacted of the principal, and entrusted the bond to the Brennan-Love Company for delivery. The latter sent it to Palm, who delivered it to the board of public lands and buildings, December 4, 1907, knowing the building contract as originally drawn had been changed in the manner described. The bond was accepted, approved, and filed in the office of the secretary of state. Palm afterward received from the contractor the premium, deducted his commission, and sent the balance to the Brennan-Love Company. After the several agents, through whom the surety business passed,

had received compensation for services, the balance of the premium reached the surety at Baltimore, and was retained until after this suit was brought. When the bond was signed by Howell, it was accompanied by the copy of the original draft of the building contract with the plans and specifications attached, and thus reached Palm, who, after delivering the bond, returned the copy unchanged to the Brennan-Love Company, and it finally reached the United Surety Company in that form. The latter asserts that it never offered to become surety on a bond to secure the performance of the building contract as changed, that Palm had no authority to consent to a change, and that it had no knowledge of the change until after the action had been instituted.

The fundamental fallacy in the defense is the assumption that the surety limited its offer of suretyship to the building contract in the hands of its agent, when the bond was signed. That was not a contract. It was not a copy of a contract. It had not been signed by either party. It was not then authenticated or certified by any public officer. It showed on its face that it was unexecuted and subject to change. The change in fact decreased the burden of the contractor. There was no public record showing its adoption by the board of public lands and buildings. There had been no act of any public officer to mislead or deceive any one. In submitting to the contractor a form for a building contract and the plans and specifications for the buildings, all of the proceedings of the state board and the acts of the officers were open and upright. What the surety signed and committed to persons of its own selection for delivery in the future upon the making of a building contract is better evidence of the offer of suretyship than the unsigned and unexecuted copy of the initial draft which correctly showed the transactions at the time the surety signed the bond. When the bond was signed, the surety knew that the building contract had not been executed. The bond and the offer of suretyship embodied therein referred alone to an executed contract. In the following words, the bond itself describes

definitely the contract to which the offer of suretyship applies: "The condition of this obligation is such that whereas the above bounden, William G. Merten, has been awarded by the board of public lands and buildings of the state of Nebraska the contract for the erection of a new fireproof wing to the hospital for the insane at Norfolk, Nebraska, also the erection of a cottage and a non-fireproof storehouse building, on the grounds of the hospital for the insane at Norfolk, Nebraska, according to certain plans and specifications on file at the office of the commissioner of public lands and buildings, at the capitol in Lincoln, Nebraska, according to the terms and conditions of said contract, a copy of which contract is made a part hereof."

This language applies to an executed contract for the construction of buildings "according to certain plans and specifications on file at the office of the commissioner of public lands and buildings." The contract awarded by the board of public lands and buildings is the one to which reference is made in the bond—not the unexecuted papers submitted by the contractor to the surety. The plans and specifications described in the offer of suretyship and in the bond are the ones "on file at the office of the commissioner of public lands and buildings"—not the unadopted ones accompanying the contractor's oral application. The contract made a part of the bond is the executed one awarded to the contractor—not the initial, unsigned draft or a copy thereof. The person entrusted with the bond for delivery held it until the contractor and the board of public lands and buildings made a binding contract conforming to the identical conditions and terms to which the offer of suretyship and the bond applied. The offer and the bond were accepted as presented to the board after the original draft had been changed, after the building contract had been executed, and after a public record of the proceedings had been made. The surety is bound by its bond.

2.　The surety also denies liability on the ground that plaintiff is not entitled to the protection of the bond, be-

cause it failed to sign the building contract as required by the following provision: "Any subcontractor must acknowledge his understanding of the plans and specifications by signing his name to the original contract as subcontractor to perform the part of the work he has contracted to do."

The building contract and the bond to secure its performance were both executed before the claim of any subcontractor came into existence. Subcontractors are not entitled to mechanics' lien on state buildings, and the state properly required the contractor to give a bond to pay their claims. This provision is made for the benefit of the state as well as for the protection of material-men. It is not only just to those who furnish building materials, but it protects the executive and the legislative departments of government from the harassment or the importunities of those who are unable to collect just claims from the contractor, through no fault or wrong of public officers. It facilitates the work of erecting public buildings and gives confidence to those who are called upon for supplies or labor. In the light of these purposes and in connection with the entire building contract, the provision quoted must be construed. The surety is liable on the bond for the faithful performance of "each and every one of the stipulations and agreements" by which the contractor is bound. Among those stipulations and agreements are the following: "The contractor must notify the proprietor, corporation or firm of any contemplated subcontract before entering on the execution of the same, and any subcontractor must acknowledge his understanding of the plans and specifications by signing his name to the original contract as subcontractor to perform the part of the work he has contracted to do. The obligations of the contractor are not relieved in any manner by any subcontract which he may enter into. * * * Contractors must also notify subcontractors of the necessity of their signing the original specifications and contract."

It thus appears that it was the duty of the contractor to notify subcontractors to sign the building contract.

This duty was not performed. Its performance was an undertaking for which the surety became liable, and it cannot escape responsibility for the default against which it bonded the state and the subcontractors. There is no error in the record, and the judgment is

AFFIRMED.

SEDGWICK, J., concurring in conclusion.

I think that the judgment of the district court should be affirmed on the ground that the contract which was attached to and made a part of the surety bond itself authorized the changes made in the contract, but not upon the ground stated in the majority opinion.